1  Richard M. Pachulski (CA Bar No. 90073)
   Jeremy V. Richards (CA Bar No. 102400)
2  Jeffrey W. Dulberg (CA Bar No. 181200)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5  Email: rpachulski@pszjlaw.com; jrichards@pszjlaw.com;
   jdulberg@pszjlaw.com
6
7  Attorneys for David K. Gottlieb,
   Chapter 7 Trustee for: KSL Media, Inc.; T.V. 10's, LLC; and
   Fulcrum 5, Inc.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>KSL MEDIA, INC., *et al.,*<br><br>Debtors.<br><br>☐ Affects KSL Media, Inc.<br>☐ Affects T.V. 10's, LLC<br>☐ Affects Fulcrum 5, Inc.<br>☒ Affects All Debtors. | Case No.: 1:13-bk-15929-AA<br><br>[Jointly Administered with Case Nos.:<br>1:13-bk-15930-AA and 1:13-bk-15931-AA]<br><br>Chapter 7 |
| DAVID K. GOTTLIEB, as Chapter 7 Trustee for KSL Media, Inc.; DAVID K. GOTTLIEB, as Chapter 7 Trustee for T.V. 10's, LLC; and DAVID K. GOTTLIEB, as Chapter 7 Trustee for Fulcrum 5, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>CUMBERLAND PACKING CORP., a New York corporation; JEM PARTNERS, LLC, a New York limited liability company,<br><br>Defendants. | Adv. No. _____<br><br>**COMPLAINT TO: (A) AVOID FRAUDULENT OBLIGATIONS AND TRANSFERS; (B) AVOID PREFERENTIAL TRANSFERS; AND (C) RECOVER AVOIDED TRANSFERS, OR THE VALUE THEREOF** |

DOCS_LA:275553.2 47516/002

1

Plaintiffs, David K. Gottlieb, as Chapter 7 Trustee for KSL Media, Inc. (the "KSL Trustee"), David K. Gottlieb, as Chapter 7 Trustee for T.V. 10's, LLC (the "TV 10 Trustee"); and David K. Gottlieb, as Chapter 7 Trustee for Fulcrum 5, Inc. (the "Fulcrum 5 Trustee" and, together with the KSL Trustee and the TV 10 Trustee, hereinafter collectively referred to as the "Plaintiffs"), allege as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b). Venue herein is proper pursuant to 28 U.S.C. §§ 1409(a) and 1409(c).

## II.
## THE PARTIES

2. On December 30, 2013: the KSL Trustee was appointed by the Bankruptcy Court as Chapter 7 trustee for the bankruptcy estate (the "KSL Estate") of KSL Media, Inc. ("KSL"), debtor herein; the TV 10 Trustee was appointed by the Bankruptcy Court as Chapter 7 trustee for the bankruptcy estate (The "TV 10 Estate") of TV 10's, LLC ("TV 10"), debtor herein; and the Fulcrum 5 Trustee was appointed as Chapter 7 trustee for the bankruptcy estate (The "Fulcrum 5 Estate") of Fulcrum 5, Inc. ("Fulcrum 5," and together with KSL and TV 10, individually a "Debtor" and collectively, the "Debtors"). The Debtors filed their Chapter 11 petitions (the "Petitions") with the Bankruptcy Court on September 11, 2013 (the "Petition Date") and their cases were converted to Chapter 7 proceedings by order entered on December 30, 2013.

3. Plaintiffs are informed and believe and thereon allege that Defendant Cumberland Packing Corp. ("Cumberland") is a corporation incorporated under the laws of the State of New York, with its principal place of business located in Brooklyn, New York.

4. Plaintiffs are informed and believe and thereon allege that Defendant JEM Partners, LLC ("JEM") is a limited liability company formed under the laws of the State of New York, with its principal place of business located in Brooklyn, New York and is an affiliate of Cumberland.

## III.

## **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

5. On or about July 9, 2012, the Debtors, Cumberland and certain other parties specified therein entered into that certain July 2012 Confidential Settlement Agreement and Release (the "Settlement Agreement"), a true and correct copy of which will be filed as Exhibit "A".[1]

6. The purpose of the Settlement Agreement was to settle certain claims (defined in the Settlement Agreement as "Cumberland's Claims") that Cumberland had asserted against the Debtors and others, and to settle certain claims (defined in the Settlement Agreement as the "KSL Claims") that the Debtors and others had asserted against Cumberland.[2]

7. Pursuant to Paragraph 2(A) of the Settlement Agreement, the Debtors and KSL Media New York, Inc. (collectively referred to in the Settlement Agreement as the "KSL Entities") agreed to pay Cumberland a total of $7 million, plus interest, as more fully set forth therein, in exchange for Cumberland's agreement to release the KSL Individuals and the KSL Entities from obligations in connection with Cumberland's Claims.

8. Pursuant to Paragraph 2(A).I and II of the Settlement Agreement, KSL paid Cumberland $1.85 million in July of 2012 (the "Downpayment") through an escrow holder, who acted as a conduit for payment of the Downpayment to Cumberland.

9. The Plaintiffs are informed and believe and thereon allege that $1.40 million of the payment due to Cumberland pursuant to Section 2(A).II of the Settlement Agreement was paid to Cumberland on behalf of the KSL Entities or the KSL Individuals by one or more insurance companies.

---

[1] The Settlement Agreement is styled "Confidential" and contains a broad confidentiality provision. However, the Trustee does not believe that the Settlement Agreement is truly confidential and further believes that a copy of the document should be filed in open court. Upon filing and service of this Complaint, the Trustee will request that Defendant Cumberland consent that the Settlement Agreement may be filed in open court. In the event Cumberland does not so consent, the Trustee will move the Court for an order permitting the Settlement Agreement to be filed under seal.

[2] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.

DOCS_LA:275553.2 47516/002                                    3

Case 1:14-ap-01059-AA    Doc 1    Filed 03/26/14    Entered 03/26/14 08:52:23    Desc
Main Document    Page 4 of 12

10. Finally, pursuant to Paragraph 2(A).III, the KSL Entities executed a promissory note (the "Promissory Note") in the original principal amount of $3.75 million in favor of JEM, a true and correct copy of which is attached hereto as Exhibit "B".

11. Pursuant to the Settlement Agreement, the KSL Entities executed in favor of JEM that certain Security Agreement (the "Security Agreement"), a true and correct copy of which is attached hereto as Exhibit "C". (The Settlement Agreement, the Promissory Note and the Security Agreement are hereinafter collectively referred to as the "Subject Agreements").

12. Pursuant to paragraph 2 of the Security Agreement, inter alia, the KSL Entities purported to grant JEM a security interest (the "Lien") in property owned, or thereafter owned by each of them, as more fully described therein (the "KSL Collateral") to secure the KSL Entities' obligations under the Promissory Note.

13. The Plaintiffs are informed and believe and thereon allege that in or about October of 2012, KSL purported to assign to JEM its interest in a life insurance policy (the "Life Policy") on the life of Liebowitz (defined below) to secure the KSL Entities' obligations to JEM under the Promissory Note.

14. As a condition to the effectiveness of the Settlement Agreement, Harold Cohen ("Cohen"), at the time an officer of KSL, executed and delivered to Cumberland that certain Negative Covenant Agreement, a true and correct copy of which is attached hereto as Exhibit "D" (the "Cohen Covenant Agreement").

15. As a condition to the effectiveness of the Settlement Agreement, Kalman S. Liebowitz ("Liebowitz"), who at the time was the direct or indirect sole owner of KSL and the other KSL Entities, also executed and delivered to Cumberland a Negative Covenant Agreement, a true and correct copy of which is attached hereto as Exhibit "E" (the "Liebowitz Covenant Agreement").

16. The Cohen Covenant Agreement and the Liebowitz Covenant Agreement (collectively, the "Covenant Agreements") are substantially identical and each provides that said agreement will remain in force until 100 days after the date on which the Promissory Note has been indefeasibly paid in full.

DOCS_LA:275553.2 47516/002                                    4

17. Each Covenant Agreement further provides that if the covenantor thereto causes a "Trigger Event", as defined therein (one of which is the receipt by either Cohen or Liebowitz of compensation from KSL or another KSL Entity in excess of $630,000), such Trigger Event shall constitute an Event of Default under the Settlement Agreement and that the covenantors (i.e., Cohen and Liebowitz) shall be liable for all unpaid amounts due and owing under the Promissory Note.

18. Through the end of July, 2013, KSL made payments to JEM on account of the Promissory Note totaling $1.95 million (collectively, the "Note Payments") including, without limitation, a payment of $150,000 made by wire transfer on June 28, 2013 (the "June Note Payment") and a payment of $150,000 made by wire transfer on July 31, 2013 (the "July Note Payment").

19. On or about August 12, 2013, KSL prepaid the outstanding balance of the Promissory Note by wire transfer to JEM in the amount of $1,945,415, comprising the outstanding principal balance of $1,942,499 and accrued interest of $2,916 (the "Prepayment"). (The Downpayment, the Note Payments and the Prepayment are hereinafter collectively referred to as the "Payments" and each individual payment comprising the Payments is hereinafter referred to as a "Payment"). Each of the Payments made by KSL is identified in Exhibit "F" attached hereto and incorporated herein by this reference as though fully set forth hereat.

20. The Debtors filed Chapter 11 bankruptcy petitions with this Court within 100 days after Cumberland and/or JEM first received payments totaling $5.2 million pursuant to paragraph 2 of the Settlement Agreement and/or the Promissory Note.

21. The filing of the foregoing bankruptcy petitions constituted an Event of Default under the Settlement Agreement, which Event of Default remained uncured as of the Petition Date.

22. The Plaintiffs are informed and believe and thereon allege that there were other uncured Events of Default (as defined in the Settlement Agreement) as of the Petition Date including, without limitation, Events of Default pursuant to section 13(iii) of the Settlement Agreement.

DOCS_LA:275553.2 47516/002                                                5

1    23.    As a consequence, the KSL Entities Release Date (as defined in the Settlement Agreement) never occurred and the KSL Entities' Release (as defined in the Settlement Agreement) never became effective pursuant to Paragraph 5 of the Settlement Agreement.

## IV.

## FIRST CLAIM FOR RELIEF

## (TO AVOID FRAUDULENT OBLIGATIONS AND TRANSFERS PURSUANT TO 11 U.S.C. § 544 AND APPLICABLE LAW – CONSTRUCTIVE FRAUD)

24.    The Plaintiffs replead, reallege and incorporate herein by reference each of the allegations contained in paragraphs 1 through 23, inclusive, of this Complaint.

25.    None of the Debtors received any benefit or value by entering into any of the Subject Agreements or by granting the Lien.

26.    The obligations incurred by the Debtors as set forth in the Subject Agreements were incurred without the Debtors, and each of them, receiving reasonably equivalent value in exchange for incurring such obligations.

27.    The Lien constitutes a transfer in property of the Debtors made by each Debtor without receiving reasonably equivalent value in exchange for said transfer.

28.    The Plaintiffs are informed and believe and thereon allege that at the time the Subject Agreements were entered into by the Debtors, and the Lien granted by each of the Debtors, and at all times thereafter; each of the Debtors: (a) was engaged, or was about to engage in a business and transactions for which the remaining assets of each such Debtor were unreasonably small in relation to the business and transactions; (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; and (c) was insolvent or became insolvent as a result of entering into the Subject Agreements and granting the Lien.

29.    The Subject Agreements (and all of the obligations of each of the Debtors set forth therein) and the Lien are voidable under California Civil Code Sec. 3439 and/or other applicable law by at least one creditor holding an unsecured claim against each Debtor that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

30. The Subject Agreements (and all of the obligations of each of the Debtors set forth therein) and the Lien constitute fraudulent transfers and are avoidable by the Plaintiffs, and each of them, pursuant to Bankruptcy Code § 544, California Civil Code Sec. 3439 and/or other applicable law.

## V.

## SECOND CLAIM FOR RELIEF

## (TO AVOID FRAUDULENT OBLIGATIONS AND TRANSFERS PURSUANT TO 11 U.S.C. § 548 – CONSTRUCTIVE FRAUD)

31. The Plaintiffs replead, reallege and incorporate herein by reference each of the allegations contained in paragraphs 1 through 23, inclusive, of this Complaint.

32. None of the Debtors received any benefit or value by entering into the Subject Agreements or by granting the Lien.

33. The obligations incurred by the Debtors as set forth in the Subject Agreements were incurred without the Debtors, and each of them, receiving reasonably equivalent value in exchange for incurring such obligations.

34. The Lien constitutes a transfer in property of the Debtors made by each Debtor without receiving reasonably equivalent value in exchange for said transfer.

35. The Plaintiffs are informed and believe and thereon allege that at the time the Subject Agreements were entered into, and the Lien granted by the Debtors, and at all times thereafter, each of the Debtors: (a) was insolvent or became insolvent as a result of incurring the obligations set forth in the Subject Agreements; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; and (c) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

36. The Subject Agreements and the Lien constitute fraudulent transfers and are avoidable by the Plaintiffs, and each of them, pursuant to Bankruptcy Code § 548.

## VI.

## THIRD CLAIM FOR RELIEF

## (TO AVOID FRAUDULENT TRANSFERS PURSUANT TO

## 11 U.S.C. § 544 AND APPLICABLE LAW – CONSTRUCTIVE FRAUD)

37. The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

38. The KSL Trustee is informed and believes that the value of the Cumberland Claims against KSL is not reasonably equivalent to the value of the Payments made by KSL to or for the benefit of Cumberland.

39. The KSL Trustee is informed and believes and thereon alleges that at the time each Payment was made, KSL: (a) was engaged, or was about to engage, in a business and transactions for which its remaining assets were unreasonably small in relation to the business and transactions; (b) intended to incur, or believed or reasonably should have believed that it would incur, debt beyond its ability to pay as they became due; and (c) was insolvent or became insolvent as a result of making each such Payment.

40. The Payments, and each of them, are voidable under California Civil Code Sec. 3439 and/or other applicable law by at least one creditor holding an unsecured claim against KSL that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

41. The Payments, and each of them, constitute fraudulent transfers and are avoidable by the KSL Trustee pursuant to Bankruptcy Code § 544 and California Civil Code Sec. 3439 and/or other applicable law.

## VII.

## FOURTH CLAIM FOR RELIEF

## (TO VOID FRAUDULENT TRANSFERS

## PURSUANT TO 11 U.S.C. § 548 – CONSTRUCTIVE FRAUD)

42. The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

43. The KSL Trustee is informed and believes and thereon alleges that the value of the Cumberland Claims against KSL is not reasonably equivalent to the value of the Payments made by KSL to or for the benefit of Cumberland.

44. The KSL Trustee is informed and believes and thereon alleges that at the time of each Payment, KSL: (a) was insolvent or became insolvent as a result of making each such Payment; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, of which any property remaining with it was an unreasonably small capital; and (c) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

45. The Payments, and each of them, constitute fraudulent transfers and are avoidable by the KSL Trustee pursuant to Bankruptcy Code § 548.

## VIII.

## FIFTH CLAIM FOR RELIEF

## (TO AVOID PREFERENTIAL TRANSFERS PURSUANT TO

## 11 U.S.C. § 547)

46. The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 23, inclusive, of this Complaint.

47. The Prepayment, the June Note Payment and the July Note Payment (collectively, the "Preference Payments") constitute the transfer of an interest of KSL in property to or for the benefit of the Defendants.

48. Each of the Preference Payments constitutes the transfer of an interest of KSL in property for or on account of an antecedent debt owed by KSL to the Defendants as creditors of KSL pursuant to the Settlement Agreement and the Promissory Note before such transfer was made.

49. Each of the Preference Payments constitutes the transfer of an interest of KSL in property made while KSL was insolvent.

50. Each of the Preference Payments constitutes the transfer of an interest of KSL in property made within 90 days before the Petition Date.

51. Each of the Preference Payments constitutes the transfer of an interest of KSL in property that enables such creditor to receive more than such creditor would receive if: (i) KSL's case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

52. Each of the Preference Payments constitutes a preferential transfer, avoidable by the KSL Trustee pursuant to Bankruptcy Code § 547.

## IX.

## SIXTH CLAIM FOR RELIEF

## (TO RECOVER AVOIDED TRANSFERS OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 550 – ASSERTED AGAINST CUMBERLAND)

53. The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 52, inclusive, of this Complaint.

54. Cumberland was the immediate transferee of the Downpayment and the entity for whose benefit the Downpayment was made.

55. Cumberland was the entity for whose benefit the Note Payments and the Prepayment were made to JEM.

56. The Payments, and each of them, are voidable by the KSL Trustee pursuant to Bankruptcy Code § § 544, 547 and/or 548, as alleged above.

57. Pursuant to Bankruptcy Code § 550, for the benefit of the KSL's Estate, the KSL Trustee is entitled to recover from Cumberland: the Payments or the value thereof under the Third and Fourth Claims for Relief; and the Preference Payments, or the value thereof, under the Fifth Claim for Relief.

X.

## SEVENTH CLAIM FOR RELIEF

### (TO RECOVER AVOIDED TRANSFERS OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 550 – ASSERTED AGAINST JEM)

58. The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 52, inclusive, of this Complaint.

59. JEM was the initial transferee of the Note Payments and the Prepayment.

60. The Note Payments and the Prepayment are avoidable by the KSL Trustee pursuant to Bankruptcy Code §§ 544, 547 and/or 548, as alleged above.

61. Pursuant to Bankruptcy Code § 550, for the benefit of the KSL Estate, the KSL Trustee is entitled to recover: the Note Payments, or the value thereof, under the Third and Fourth Claims for Relief; and the Preference Payments, or the value thereof, under the Fifth Claim for Relief.

WHEREFORE, the Plaintiffs pray for judgment as follows:

1. On the First and Second Claims for Relief, a judgment against all Defendants avoiding the Subject Agreements (and the obligations of the Debtors set forth thereon);

2. On the Third and Fourth Claims for Relief, a judgment in favor of the KSL Trustee against all Defendants avoiding the Payments, and each of them;

3. On the Fifth Claim for Relief, a judgment in favor of the KSL Trustee against all Defendants avoiding the Preference Payments;

4. On the Sixth Claim for Relief, a judgment in favor of the KSL Trustee against Cumberland recovering for the KSL Estate an amount not less than $5.695 million;

5. On the Seventh Claim for Relief, a judgment in favor of the KSL Trustee against JEM recovering for the KSL Estate an amount not less than $3.895 million.

6. On all Claims for Relief, for costs of suit incurred herein; and

7. For such other and further relief as the Court deems just and proper.

| | | |
|---|---|---|
| Dated: March 26, 2014 | | PACHULSKI STANG ZIEHL & JONES LLP |

By    /s/ *Jeremy V. Richards*
       Richard M. Pachulski
       Jeremy V. Richards
       Jeffrey W. Dulberg

Attorneys for
Plaintiffs David K. Gottlieb,
Chapter 7 Trustee for KSL Media, Inc.;
David K. Gottlieb, Chapter 11 Trustee for
T.V. 10's, LLC; and David K. Gottlieb,
Chapter 11 Trustee for Fulcrum 5, Inc.

DOCS_LA:275553.2 47516/002

12