1  Richard M. Pachulski (CA Bar No. 90073)
   Jeremy V. Richards (CA Bar No. 102400)
2  Jeffrey W. Dulberg (CA Bar No. 181200)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5  Email: rpachulski@pszjlaw.com; jrichards@pszjlaw.com;
   jdulberg@pszjlaw.com
6
7  Attorneys for David K. Gottlieb,
   Chapter 7 Trustee for: KSL Media, Inc.; T.V. 10's, LLC; and
   Fulcrum 5, Inc.
8
                    UNITED STATES BANKRUPTCY COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10
                    SAN FERNANDO VALLEY DIVISION
11

| | |
|---|---|
| In re: | Case No.: 1:13-bk-15929-AA |
| KSL MEDIA, INC., *et al.*, | [Jointly Administered with Case Nos.: 1:13-bk-15930-AA and 1:13-bk-15931-AA] |
| Debtors. | Chapter 7 |
| ☐ Affects KSL Media, Inc. ☐ Affects T.V. 10's, LLC ☐ Affects Fulcrum 5, Inc. ☒ Affects All Debtors. | |
| DAVID K. GOTTLIEB, as Chapter 7 Trustee for KSL Media, Inc.; DAVID K. GOTTLIEB, as Chapter 7 Trustee for T.V. 10's, LLC; and DAVID K. GOTTLIEB, as Chapter 7 Trustee for Fulcrum 5, Inc., | Adv. No. 1:14-ap-01059-AA |
| Plaintiffs, | COMPLAINT TO: (A) AVOID FRAUDULENT OBLIGATIONS AND TRANSFERS; (B) AVOID PREFERENTIAL TRANSFERS; AND (C) RECOVER AVOIDED TRANSFERS, OR THE VALUE THEREOF |
| v. | |
| CUMBERLAND PACKING CORP., a New York corporation; JEM PARTNERS, LLC, a New York limited liability company, | |
| Defendants. | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:275553.2 47516/002

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiffs, David K. Gottlieb, as Chapter 7 Trustee for KSL Media, Inc. (the "KSL Trustee"), David K. Gottlieb, as Chapter 7 Trustee for T.V. 10's, LLC (the "TV 10 Trustee"); and David K. Gottlieb, as Chapter 7 Trustee for Fulcrum 5, Inc. (the "Fulcrum 5 Trustee" and, together with the KSL Trustee and the TV 10 Trustee, hereinafter collectively referred to as the "Plaintiffs"), allege as follows:

## I.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b). Venue herein is proper pursuant to 28 U.S.C. §§ 1409(a) and 1409(c).

## II.

## THE PARTIES

2.     On December 30, 2013: the KSL Trustee was appointed by the Bankruptcy Court as Chapter 7 trustee for the bankruptcy estate (the "KSL Estate") of KSL Media, Inc. ("KSL"), debtor herein; the TV 10 Trustee was appointed by the Bankruptcy Court as Chapter 7 trustee for the bankruptcy estate (The "TV 10 Estate") of TV 10's, LLC ("TV 10"), debtor herein; and the Fulcrum 5 Trustee was appointed as Chapter 7 trustee for the bankruptcy estate (The "Fulcrum 5 Estate") of Fulcrum 5, Inc. ("Fulcrum 5," and together with KSL and TV 10, individually a "Debtor" and collectively, the "Debtors"). The Debtors filed their Chapter 11 petitions (the "Petitions") with the Bankruptcy Court on September 11, 2013 (the "Petition Date") and their cases were converted to Chapter 7 proceedings by order entered on December 30, 2013.

3.     Plaintiffs are informed and believe and thereon allege that Defendant Cumberland Packing Corp. ("Cumberland") is a corporation incorporated under the laws of the State of New York, with its principal place of business located in Brooklyn, New York.

4.     Plaintiffs are informed and believe and thereon allege that Defendant JEM Partners, LLC ("JEM") is a limited liability company formed under the laws of the State of New York, with its principal place of business located in Brooklyn, New York and is an affiliate of Cumberland.

### III.

### <u>ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF</u>

5.     On or about July 9, 2012, the Debtors, Cumberland and certain other parties specified therein entered into that certain July 2012 Confidential Settlement Agreement and Release (the "Settlement Agreement"), a true and correct copy of which will be filed as Exhibit "A".[1]

6.     The purpose of the Settlement Agreement was to settle certain claims (defined in the Settlement Agreement as "Cumberland's Claims") that Cumberland had asserted against the Debtors and others, and to settle certain claims (defined in the Settlement Agreement as the "KSL Claims") that the Debtors and others had asserted against Cumberland.[2]

7.     Pursuant to Paragraph 2(A) of the Settlement Agreement, the Debtors and KSL Media New York, Inc. (collectively referred to in the Settlement Agreement as the "KSL Entities") agreed to pay Cumberland a total of $7 million, plus interest, as more fully set forth therein, in exchange for Cumberland's agreement to release the KSL Individuals and the KSL Entities from obligations in connection with Cumberland's Claims.

8.     Pursuant to Paragraph 2(A).I and II of the Settlement Agreement, KSL paid Cumberland $1.85 million in July of 2012 (the "Downpayment") through an escrow holder, who acted as a conduit for payment of the Downpayment to Cumberland.

9.     The Plaintiffs are informed and believe and thereon allege that $1.40 million of the payment due to Cumberland pursuant to Section 2(A).II of the Settlement Agreement was paid to Cumberland on behalf of the KSL Entities or the KSL Individuals by one or more insurance companies.

---

[1]     The Settlement Agreement is styled "Confidential" and contains a broad confidentiality provision. However, the Trustee does not believe that the Settlement Agreement is truly confidential and further believes that a copy of the document should be filed in open court. Upon filing and service of this Complaint, the Trustee will request that Defendant Cumberland consent that the Settlement Agreement may be filed in open court. In the event Cumberland does not so consent, the Trustee will move the Court for an order permitting the Settlement Agreement to be filed under seal.

[2]     All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10.     Finally, pursuant to Paragraph 2(A).III, the KSL Entities executed a promissory note (the "Promissory Note") in the original principal amount of $3.75 million in favor of JEM, a true and correct copy of which is attached hereto as Exhibit "B".

11.     Pursuant to the Settlement Agreement, the KSL Entities executed in favor of JEM that certain Security Agreement (the "Security Agreement"), a true and correct copy of which is attached hereto as Exhibit "C". (The Settlement Agreement, the Promissory Note and the Security Agreement are hereinafter collectively referred to as the "Subject Agreements").

12.     Pursuant to paragraph 2 of the Security Agreement, inter alia, the KSL Entities purported to grant JEM a security interest (the "Lien") in property owned, or thereafter owned by each of them, as more fully described therein (the "KSL Collateral") to secure the KSL Entities' obligations under the Promissory Note.

13.     The Plaintiffs are informed and believe and thereon allege that in or about October of 2012, KSL purported to assign to JEM its interest in a life insurance policy (the "Life Policy") on the life of Liebowitz (defined below) to secure the KSL Entities' obligations to JEM under the Promissory Note.

14.     As a condition to the effectiveness of the Settlement Agreement, Harold Cohen ("Cohen"), at the time an officer of KSL, executed and delivered to Cumberland that certain Negative Covenant Agreement, a true and correct copy of which is attached hereto as Exhibit "D" (the "Cohen Covenant Agreement").

15.     As a condition to the effectiveness of the Settlement Agreement, Kalman S. Liebowitz ("Liebowitz"), who at the time was the direct or indirect sole owner of KSL and the other KSL Entities, also executed and delivered to Cumberland a Negative Covenant Agreement, a true and correct copy of which is attached hereto as Exhibit "E" (the "Liebowitz Covenant Agreement").

16.     The Cohen Covenant Agreement and the Liebowitz Covenant Agreement (collectively, the "Covenant Agreements") are substantially identical and each provides that said agreement will remain in force until 100 days after the date on which the Promissory Note has been indefeasibly paid in full.

17.     Each Covenant Agreement further provides that if the covenantor thereto causes a "Trigger Event", as defined therein (one of which is the receipt by either Cohen or Liebowitz of compensation from KSL or another KSL Entity in excess of $630,000), such Trigger Event shall constitute an Event of Default under the Settlement Agreement and that the covenantors (i.e., Cohen and Liebowitz) shall be liable for all unpaid amounts due and owing under the Promissory Note.

18.     Through the end of July, 2013, KSL made payments to JEM on account of the Promissory Note totaling $1.95 million (collectively, the "Note Payments") including, without limitation, a payment of $150,000 made by wire transfer on June 28, 2013 (the "June Note Payment") and a payment of $150,000 made by wire transfer on July 31, 2013 (the "July Note Payment").

19.     On or about August 12, 2013, KSL prepaid the outstanding balance of the Promissory Note by wire transfer to JEM in the amount of $1,945,415, comprising the outstanding principal balance of $1,942,499 and accrued interest of $2,916 (the "Prepayment"). (The Downpayment, the Note Payments and the Prepayment are hereinafter collectively referred to as the "Payments" and each individual payment comprising the Payments is hereinafter referred to as a "Payment"). Each of the Payments made by KSL is identified in Exhibit "F" attached hereto and incorporated herein by this reference as though fully set forth hereat.

20.     The Debtors filed Chapter 11 bankruptcy petitions with this Court within 100 days after Cumberland and/or JEM first received payments totaling $5.2 million pursuant to paragraph 2 of the Settlement Agreement and/or the Promissory Note.

21.     The filing of the foregoing bankruptcy petitions constituted an Event of Default under the Settlement Agreement, which Event of Default remained uncured as of the Petition Date.

22.     The Plaintiffs are informed and believe and thereon allege that there were other uncured Events of Default (as defined in the Settlement Agreement) as of the Petition Date including, without limitation, Events of Default pursuant to section 13(iii) of the Settlement Agreement.

23.     As a consequence, the KSL Entities Release Date (as defined in the Settlement Agreement) never occurred and the KSL Entities' Release (as defined in the Settlement Agreement) never became effective pursuant to Paragraph 5 of the Settlement Agreement.

<div align="center">

**IV.**

**FIRST CLAIM FOR RELIEF**

**(TO AVOID FRAUDULENT OBLIGATIONS AND TRANSFERS PURSUANT**

**TO 11 U.S.C. § 544 AND APPLICABLE LAW – CONSTRUCTIVE FRAUD)**

</div>

24.     The Plaintiffs replead, reallege and incorporate herein by reference each of the allegations contained in paragraphs 1 through 23, inclusive, of this Complaint.

25.     None of the Debtors received any benefit or value by entering into any of the Subject Agreements or by granting the Lien.

26.     The obligations incurred by the Debtors as set forth in the Subject Agreements were incurred without the Debtors, and each of them, receiving reasonably equivalent value in exchange for incurring such obligations.

27.     The Lien constitutes a transfer in property of the Debtors made by each Debtor without receiving reasonably equivalent value in exchange for said transfer.

28.     The Plaintiffs are informed and believe and thereon allege that at the time the Subject Agreements were entered into by the Debtors, and the Lien granted by each of the Debtors, and at all times thereafter; each of the Debtors:  (a) was engaged, or was about to engage in a business and transactions for which the remaining assets of each such Debtor were unreasonably small in relation to the business and transactions; (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; and (c) was insolvent or became insolvent as a result of entering into the Subject Agreements and granting the Lien.

29.     The Subject Agreements (and all of the obligations of each of the Debtors set forth therein) and the Lien are voidable under California Civil Code Sec. 3439 and/or other applicable law by at least one creditor holding an unsecured claim against each Debtor that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

Left margin vertical text:
PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    30.    The Subject Agreements (and all of the obligations of each of the Debtors set forth

2    therein) and the Lien constitute fraudulent transfers and are avoidable by the Plaintiffs, and each of

3    them, pursuant to Bankruptcy Code § 544, California Civil Code Sec. 3439 and/or other applicable

4    law.

5    **V.**

6    **SECOND CLAIM FOR RELIEF**

7    **(TO AVOID FRAUDULENT OBLIGATIONS AND TRANSFERS PURSUANT**

8    **TO 11 U.S.C. § 548 – CONSTRUCTIVE FRAUD)**

9    31.    The Plaintiffs replead, reallege and incorporate herein by reference each of the

10    allegations contained in paragraphs 1 through 23, inclusive, of this Complaint.

11    32.    None of the Debtors received any benefit or value by entering into the Subject

12    Agreements or by granting the Lien.

13    33.    The obligations incurred by the Debtors as set forth in the Subject Agreements were

14    incurred without the Debtors, and each of them, receiving reasonably equivalent value in exchange

15    for incurring such obligations.

16    34.    The Lien constitutes a transfer in property of the Debtors made by each Debtor

17    without receiving reasonably equivalent value in exchange for said transfer.

18    35.    The Plaintiffs are informed and believe and thereon allege that at the time the Subject

19    Agreements were entered into, and the Lien granted by the Debtors, and at all times thereafter, each

20    of the Debtors: (a) was insolvent or became insolvent as a result of incurring the obligations set forth

21    in the Subject Agreements; (b) was engaged in business or a transaction, or was about to engage in

22    business or a transaction, for which any property remaining with it was an unreasonably small

23    capital; and (c) intended to incur, or believed that it would incur, debts that would be beyond its

24    ability to pay as such debts matured.

25    36.    The Subject Agreements and the Lien constitute fraudulent transfers and are

26    avoidable by the Plaintiffs, and each of them, pursuant to Bankruptcy Code § 548.

27

28

<div align="center" style="float:left">PACHULSKI STANG ZIEHL & JONES LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES, CALIFORNIA</div>

## VI.

### THIRD CLAIM FOR RELIEF

### (TO AVOID FRAUDULENT TRANSFERS PURSUANT TO

### 11 U.S.C. § 544 AND APPLICABLE LAW – CONSTRUCTIVE FRAUD)

37.    The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

38.    The KSL Trustee is informed and believes that the value of the Cumberland Claims against KSL is not reasonably equivalent to the value of the Payments made by KSL to or for the benefit of Cumberland.

39.    The KSL Trustee is informed and believes and thereon alleges that at the time each Payment was made, KSL:  (a) was engaged, or was about to engage, in a business and transactions for which its remaining assets were unreasonably small in relation to the business and transactions; (b) intended to incur, or believed or reasonably should have believed that it would incur, debt beyond its ability to pay as they became due; and (c) was insolvent or became insolvent as a result of making each such Payment.

40.    The Payments, and each of them, are voidable under California Civil Code Sec. 3439 and/or other applicable law by at least one creditor holding an unsecured claim against KSL that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

41.    The Payments, and each of them, constitute fraudulent transfers and are avoidable by the KSL Trustee pursuant to Bankruptcy Code § 544 and California Civil Code Sec. 3439 and/or other applicable law.

**VII.**

**FOURTH CLAIM FOR RELIEF**

**(TO VOID FRAUDULENT TRANSFERS**

**PURSUANT TO 11 U.S.C. § 548 – CONSTRUCTIVE FRAUD)**

42.    The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

43.    The KSL Trustee is informed and believes and thereon alleges that the value of the Cumberland Claims against KSL is not reasonably equivalent to the value of the Payments made by KSL to or for the benefit of Cumberland.

44.    The KSL Trustee is informed and believes and thereon alleges that at the time of each Payment, KSL:  (a) was insolvent or became insolvent as a result of making each such Payment; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, of which any property remaining with it was an unreasonably small capital; and (c) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

45.    The Payments, and each of them, constitute fraudulent transfers and are avoidable by the KSL Trustee pursuant to Bankruptcy Code § 548.

**VIII.**

**FIFTH CLAIM FOR RELIEF**

**(TO AVOID PREFERENTIAL TRANSFERS PURSUANT TO**

**11 U.S.C. § 547)**

46.    The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 23, inclusive, of this Complaint.

47.    The Prepayment, the June Note Payment and the July Note Payment (collectively, the "Preference Payments") constitute the transfer of an interest of KSL in property to or for the benefit of the Defendants.

48.    Each of the Preference Payments constitutes the transfer of an interest of KSL in property for or on account of an antecedent debt owed by KSL to the Defendants as creditors of KSL pursuant to the Settlement Agreement and the Promissory Note before such transfer was made.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

49.     Each of the Preference Payments constitutes the transfer of an interest of KSL in property made while KSL was insolvent.

50.     Each of the Preference Payments constitutes the transfer of an interest of KSL in property made within 90 days before the Petition Date.

51.     Each of the Preference Payments constitutes the transfer of an interest of KSL in property that enables such creditor to receive more than such creditor would receive if: (i) KSL's case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

52.     Each of the Preference Payments constitutes a preferential transfer, avoidable by the KSL Trustee pursuant to Bankruptcy Code § 547.

IX.

**SIXTH CLAIM FOR RELIEF**

**(TO RECOVER AVOIDED TRANSFERS OR THE VALUE THEREOF**

**PURSUANT TO 11 U.S.C. § 550 – ASSERTED AGAINST CUMBERLAND)**

53.     The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 52, inclusive, of this Complaint.

54.     Cumberland was the immediate transferee of the Downpayment and the entity for whose benefit the Downpayment was made.

55.     Cumberland was the entity for whose benefit the Note Payments and the Prepayment were made to JEM.

56.     The Payments, and each of them, are voidable by the KSL Trustee pursuant to Bankruptcy Code § § 544, 547 and/or 548, as alleged above.

57.     Pursuant to Bankruptcy Code § 550, for the benefit of the KSL's Estate, the KSL Trustee is entitled to recover from Cumberland: the Payments or the value thereof under the Third and Fourth Claims for Relief; and the Preference Payments, or the value thereof, under the Fifth Claim for Relief.

## X.

### SEVENTH CLAIM FOR RELIEF

### (TO RECOVER AVOIDED TRANSFERS OR THE VALUE THEREOF

### PURSUANT TO 11 U.S.C. § 550 – ASSERTED AGAINST JEM)

58.    The KSL Trustee repleads, realleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 52, inclusive, of this Complaint.

59.    JEM was the initial transferee of the Note Payments and the Prepayment.

60.    The Note Payments and the Prepayment are avoidable by the KSL Trustee pursuant to Bankruptcy Code § § 544, 547 and/or 548, as alleged above.

61.    Pursuant to Bankruptcy Code § 550, for the benefit of the KSL Estate, the KSL Trustee is entitled to recover: the Note Payments, or the value thereof, under the Third and Fourth Claims for Relief; and the Preference Payments, or the value thereof, under the Fifth Claim for Relief.

WHEREFORE, the Plaintiffs pray for judgment as follows:

1.    On the First and Second Claims for Relief, a judgment against all Defendants avoiding the Subject Agreements (and the obligations of the Debtors set forth thereon);

2.    On the Third and Fourth Claims for Relief, a judgment in favor of the KSL Trustee against all Defendants avoiding the Payments, and each of them;

3.    On the Fifth Claim for Relief, a judgment in favor of the KSL Trustee against all Defendants avoiding the Preference Payments;

4.    On the Sixth Claim for Relief, a judgment in favor of the KSL Trustee against Cumberland recovering for the KSL Estate an amount not less than $5.695 million;

5.    On the Seventh Claim for Relief, a judgment in favor of the KSL Trustee against JEM recovering for the KSL Estate an amount not less than $3.895 million.

6.    On all Claims for Relief, for costs of suit incurred herein; and

7.    For such other and further relief as the Court deems just and proper.

1    Dated:    March 26, 2014                 PACHULSKI STANG ZIEHL & JONES LLP

2

3                                             By    /s/ Jeremy V. Richards
                                                    Richard M. Pachulski
                                                    Jeremy V. Richards
4                                                   Jeffrey W. Dulberg

5                                                   Attorneys for
                                                    Plaintiffs David K. Gottlieb,
6                                                   Chapter 7 Trustee for KSL Media, Inc.;
                                                    David K. Gottlieb, Chapter 11 Trustee for
7                                                   T.V. 10's, LLC; and David K. Gottlieb,
                                                    Chapter 11 Trustee for Fulcrum 5, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:275553.2 47516/002

## EXHIBIT "A"

Intentionally Omitted.

To be Filed at a Later Date

# EXHIBIT B

## PROMISSORY NOTE (KSL ENTITIES)

$3,750,000.00                                     New York, New York
                                                       July 1, 2012

     FOR VALUE RECEIVED, KSL Media, Inc., KSL Media New York, Inc., TV10S, LLC, and Fulcrum 5, Inc. (individually and collectively, "Maker"), on a joint and several basis, promise to pay to the order of JEM Partners LLC (together with any successors and assigns permitted pursuant to Section 15 of the Settlement Agreement (as hereinafter defined), the "Payee") the principal sum of Three Million Seven Hundred and Fifty Thousand Dollars ($3,750,000.00) (as the same may be reduced by payments made pursuant to the terms hereof, the "Principal Balance"), with interest on the Principal Balance on the declining balance, until paid in full, at the rates per annum hereinafter specified, in coin or currency, which, at the time or times of payment, is legal tender for the payment of public and private debts in the United States of America, all in accordance with the terms hereinafter set forth. All interest payable hereunder shall be computed on the basis of a 360 day year and actual days elapsed.

1.      Payment Location. All payments of principal and interest under this Note (the "Monthly Payments Note" or this "Note") shall be made in good funds to the following location, or at such other place as may be designated in writing by Payee, for the benefit of Payee: 60 Flushing Avenue, Brooklyn, New York 11205

2.      Identification of Note. This Note is the Promissory Note referred to in, and evidences indebtedness incurred under, that certain Settlement Agreement of even date herewith (as amended, modified or supplemented from time to time, the "Settlement Agreement") by and among Maker and affiliates of Payee and the other parties thereto.

3.      Payments. This Note shall be payable by Maker to Payee as follows:

    (a)    From and after the date hereof until the date on which this Note is paid in full, the unpaid Principal Balance shall accrue interest at the rate of four and one half percent (4.5%) *per annum*, simple interest;

    (b)    Maker agrees to make payments of principal and interest as set forth in the schedule attached hereto and incorporated herein beginning on August 1, 2012, and continuing on or before the first day of each calendar month thereafter until the paid in full ("Monthly Payments");

    (c)    If not sooner paid, the entire unpaid Principal Balance and all unpaid interest accrued thereon, if any, shall be due and payable in full on **October 1, 2014** (the "Maturity Date") or upon the earlier acceleration of this Note after the occurrence of an uncured Event of Default.

4.     <u>Prepayment</u>.  The Principal Balance and accrued interest thereon may be prepaid in full or in part, at any time prior to the Maturity Date, without penalty.

5.     <u>Default</u>.  The occurrence of any of the following shall constitute an "Event of Default" under this Note:  (i) Maker's failure to make any of the Monthly Payments required hereunder within five (5) days after the date on which notice of such default is given hereunder, provided, however, that Payee shall not be required to deliver a notice of default more than two (2) times in any twelve month period, it being understood and agreed that after the delivery of the second notice of default under this clause (i) in any twelve month period, no written notice is required and Maker's subsequent failure to make any Monthly Payments when required (after accounting for the five (5) day grace period shall therafter constitute an Event of Default immediately upon the occurrence of such default; and (ii) Maker's failure to pay the Principal Balance and accrued interest on or before the Maturity Date within five (5) days after the occurrence of the Maturity Date and five (5) days written notice of default and opportunity to cure; and (iii) or the occurrence of an uncured Event of Default under the Settlement Agreement.  Upon the occurrence of an uncured Event of Default, all amounts due under this Note shall become immediately due and payable, without any notice or demand whatsoever, and Payee may immediately and without demand exercise any of its rights and remedies granted herein, the Settlement Agreement or available at law or in equity, including, without limitation, all rights of a secured party under the Security Agreement accompanying this Note. After the occurrence of an Event of Default, the outstanding Principal Balance shall accrue interest at the rate of nine per cent (9%) *per annum* (the "Default Rate") until such Event of Default is cured.  In addition, in the event that any payment required to be made by Maker hereunder is not made within ten (10) days after the due date therefor (without giving effect to any cure period provided for hereunder), Maker shall be assessed a late fee equal to five percent (5%) of the amount of the late payment, which shall be payable upon demand.

6.     <u>Legal Fees.</u>  In any action or proceeding to enforce or interpret the provisions hereof, the prevailing party is entitled all costs and expenses incurred, including, without limitation, a Party's legal fees and expenses.

7.     <u>LAWFUL LIMITS.</u>  THIS NOTE IS EXPRESSLY LIMITED SO THAT IN NO CONTINGENCY OR EVENT WHATSOEVER, WHETHER BY REASON OF ACCELERATION OR OTHERWISE, SHALL THE INTEREST AND OTHER CHARGES PAID OR AGREED TO BE PAID TO PAYEE FOR THE USE, FORBEARANCE OR DETENTION OF MONEY HEREUNDER EXCEED THE MAXIMUM RATE OF INTEREST ALLOWED BY LAW (THE "MAXIMUM RATE.") IF, DUE TO ANY CIRCUMSTANCE WHATSOEVER, FULFILLMENT OF ANY PROVISION HEREOF, AT THE TIME PERFORMANCE OF SUCH PROVISION SHALL BE DUE, SHALL EXCEED ANY SUCH LIMIT, THEN, THE OBLIGATION TO BE SO FULFILLED SHALL BE REDUCED TO SUCH LAWFUL LIMIT, AND, IF PAYEE SHALL HAVE RECEIVED INTEREST OR ANY OTHER CHARGES OF ANY KIND WHICH MIGHT BE DEEMED TO BE INTEREST UNDER APPLICABLE LAW IN EXCESS OF THE MAXIMUM LAWFUL RATE,

THEN SUCH EXCESS SHALL BE APPLIED FIRST TO ANY UNPAID FEES AND
CHARGES HEREUNDER, THEN TO UNPAID PRINCIPAL BALANCE OWED BY
MAKER HEREUNDER, AND IF THE THEN REMAINING EXCESS INTEREST IS
GREATER THAN THE PREVIOUSLY UNPAID PRINCIPAL BALANCE, PAYEE
SHALL PROMPTLY REFUND SUCH EXCESS AMOUNT TO MAKER.

8. Applicable Law; Severability. THIS NOTE SHALL BE GOVERNED BY AND
SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE
INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO
CONFLICTS OF LAW PRINCIPLES. THE INVALIDITY, ILLEGALITY OR
UNENFORCEABILITY OF ANY PROVISION OF THIS NOTE SHALL NOT
AFFECT OR IMPAIR THE VALIDITY, LEGALITY OR ENFORCEABILITY OF THE
REMAINDER OF THIS NOTE, AND TO THIS END, THE PROVISIONS OF THIS
NOTE ARE DECLARED TO BE SEVERABLE.

9.    Consent to Jurisdiction. MAKER AND PAYEE HEREBY CONSENT TO THE
JURISDICTION OF THE FEDERAL COURT FOR THE EASTERN DISTRICT OF
NEW YORK, AND IRREVOCABLY AGREE THAT ALL ACTIONS OR
PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE SHALL BE
LITIGATED IN SUCH COURTS. MAKER AND PAYEE EACH EXPRESSLY
CONSENT TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVE
ANY DEFENSE OF FORUM NON CONVENIENS.

10.    TIME OF THE ESSENCE. TIME IS OF THE ESSENCE WITH RESPECT TO
MAKER'S OBLIGATIONS HEREUNDER.

**[SIGNATURE PAGE FOLLOWS]**

**[SIGNATURE PAGE TO PROMISSORY NOTE [KSL ENTITIES]**

**KSL MEDIA, INC.**

By: _____

Name: _____ KAl LIEBowiTZ _____

Title: _____ CHAIRMAN _____

**KSL MEDIA NEW YORK, INC.**

By: _____

Name: _____ KAl LIEBowiTZ _____

Title: _____ CHAIRMAN _____

**TV10S, LLC**

By: _____

Name: _____ KAl LIEBowiTZ _____

Title: _____

**FULCRUM 5, INC.**

By: _____

Name: _____ KAl LIEBowiTZ _____

Title: _____

# Loan Amortization Schedule

| Enter Values | | | Loan Summary | |
|---|---|---|---|---|
| Amount | $3,750,000 | | Scheduled payment | $150,000.00 |
| | | | | |
| Loan Amount | $3,750,000 | | Total Interest | $195,040.26 |
| Annual Interest Rate | 4.50% | | | |
| Loan Start Date | 7/1/2012 | | | |

| Pmt. No. | Payment Date | Loan Balance | Scheduled Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|
| 1 | 8/1/2012 | $3,750,000 | $150,000 | $135,938 | $14,063 | $3,614,063 | $14,063 |
| 2 | 9/1/2012 | $3,614,063 | $150,000 | $136,447 | $13,553 | $3,477,615 | $27,615 |
| 3 | 10/1/2012 | $3,477,615 | $150,000 | $136,959 | $13,041 | $3,340,656 | $40,656 |
| 4 | 11/1/2012 | $3,340,656 | $150,000 | $137,473 | $12,527 | $3,203,184 | $53,184 |
| 5 | 12/1/2012 | $3,203,184 | $150,000 | $137,988 | $12,012 | $3,065,196 | $65,196 |
| 6 | 1/1/2013 | $3,065,196 | $150,000 | $138,506 | $11,494 | $2,926,690 | $76,690 |
| 7 | 2/1/2013 | $2,926,690 | $150,000 | $139,025 | $10,975 | $2,787,665 | $87,665 |
| 8 | 3/1/2013 | $2,787,665 | $150,000 | $139,546 | $10,454 | $2,648,119 | $98,119 |
| 9 | 4/1/2013 | $2,648,119 | $150,000 | $140,070 | $9,930 | $2,508,049 | $108,049 |
| 10 | 5/1/2013 | $2,508,049 | $150,000 | $140,595 | $9,405 | $2,367,455 | $117,455 |
| 11 | 6/1/2013 | $2,367,455 | $150,000 | $141,122 | $8,878 | $2,226,333 | $126,333 |
| 12 | 7/1/2013 | $2,226,333 | $150,000 | $141,651 | $8,349 | $2,084,681 | $134,681 |
| 13 | 8/1/2013 | $2,084,681 | $150,000 | $142,182 | $7,818 | $1,942,499 | $142,499 |
| 14 | 9/1/2013 | $1,942,499 | $150,000 | $142,716 | $7,284 | $1,799,783 | $149,783 |
| 15 | 10/1/2013 | $1,799,783 | $150,000 | $143,251 | $6,749 | $1,656,532 | $156,532 |
| 16 | 11/1/2013 | $1,656,532 | $150,000 | $143,788 | $6,212 | $1,512,744 | $162,744 |
| 17 | 12/1/2013 | $1,512,744 | $150,000 | $144,327 | $5,673 | $1,368,417 | $168,417 |
| 18 | 1/1/2014 | $1,368,417 | $150,000 | $144,868 | $5,132 | $1,223,549 | $173,549 |
| 19 | 2/1/2014 | $1,223,549 | $150,000 | $145,412 | $4,588 | $1,078,137 | $178,137 |
| 20 | 3/1/2014 | $1,078,137 | $150,000 | $145,957 | $4,043 | $932,180 | $182,180 |
| 21 | 4/1/2014 | $932,180 | $150,000 | $146,504 | $3,496 | $785,676 | $185,676 |
| 22 | 5/1/2014 | $785,676 | $150,000 | $147,054 | $2,946 | $638,622 | $188,622 |
| 23 | 6/1/2014 | $638,622 | $150,000 | $147,605 | $2,395 | $491,017 | $191,017 |
| 24 | 7/1/2014 | $491,017 | $150,000 | $148,159 | $1,841 | $342,858 | $192,858 |
| 25 | 8/1/2014 | $342,858 | $150,000 | $148,714 | $1,286 | $194,144 | $194,144 |
| 26 | 9/1/2014 | $194,144 | $150,000 | $149,272 | $728 | $44,872 | $194,872 |
| 27 | 10/1/2014 | $44,872 | $45,040 | $44,872 | $168 | $0 | $195,040 |

$3,750,000    $195,040

# EXHIBIT C

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Security Agreement") is entered into as of July __, 2012, by KSL MEDIA, INC., a Delaware corporation with an address at 387 Park Avenue South, 4th Floor, New York, New York 10016 ("KSL"), KSL MEDIA NEW YORK, INC., a New York corporation with an address at 387 Park Avenue South, 4th Floor, New York, New York 10016 ("KSL New York"), TV10s LLC ("TV10s") , a California limited liability company with an address at 387 Park Avenue South, 4th Floor, New York, New York 10016, and Fulcrum 5, Inc. ("Fulcrum," collectively with KSL, KSL New York and TV10s, "Grantor"), a Delaware corporation with an address at 387 Park Avenue South, 4th Floor, New York, New York 10016 in favor of JEM PARTNERS LLC ("Secured Party").

## RECITALS

WHEREAS, pursuant to that certain Settlement Agreement dated as of the date hereof (as the same may be amended or modified from time to time, the "Settlement Agreement") among KSL, KSL New York, TV10s, LLC, Fulcrum 5, Inc., Kalman S. Liebowitz, Harold (a/k/a Hank) Cohen, and Cumberland Packing Corp., Grantor has agreed to grant a security interest in its assets to Secured Party on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.   Definitions. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

(a)   [Left Intentionally Blank]

(b)   The following terms shall have the meanings set forth below:

"Collateral" has the meaning provided in Section 2 hereof.

"Secured Obligations" means the obligations owed by Grantor under the Promissory Note.

"UCC" means the Uniform Commercial Code as in effect from time to time in the state of New York except as such term may be used in connection with the perfection of the Collateral and then the applicable jurisdiction with respect to such affected Collateral shall apply.

2.   Grant of Security Interest in the Collateral.   To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, mandatory prepayment or otherwise, of the Secured Obligations, Grantor hereby grants to Secured Party a continuing security interest in, and a right to set off against, any and all right, title and interest of Grantor in and to all of

the following, whether now owned or existing or owned, acquired, or arising hereafter (collectively, the "Collateral"):

        a.     All fees, commissions, and other remuneration received by Grantor that is attributable to amounts received from customers of Grantor or otherwise related to the sale of media time or other rendition of services by any Grantor, less amounts required to be paid to any vendor providing the services, media time or time slot sold by such Grantor ("Fees"). For avoidance of doubt, Fees do not include funds paid to or held by Grantor for the payment of media expenditures to its vendors that comprise a portion of the amounts received from customers and such funds shall not be considered Collateral and Secured Party shall have no interest in same;

        b.     All presently owned and hereafter acquired general intangibles, goods, equipment, Investment Property (as defined in the UCC), Deposit Accounts (as defined in the UCC) (except that Secured Party shall not have the right to retain amounts in any Deposit Account that does not constitute Fees), vehicles and fixtures, together with all accessions, parts and appurtenances thereto pertaining or attached or kept or used or intended for use in connection therewith and all substitutions, renewals, improvements and replacements of and additions thereto (sometimes hereinafter individually and collectively referred to as "Equipment"); and

        c.     All proceeds and products or any accessions to all of the foregoing described properties and interest in properties.

       3.     **Covenants.** Grantor shall execute and deliver to Secured Party and/or file such agreements, assignments or instruments (including affidavits, notices, reaffirmations and amendments and restatements of existing documents, as Secured Party may reasonably request) and do all such other things as Secured Party may reasonably deem necessary or appropriate (i) to assure to Secured Party its security interests hereunder, including such instruments as Secured Party may from time to time reasonably request in order to perfect and maintain the security interests granted hereunder in accordance with the UCC, including, without limitation, financing statements (including continuation statements), to otherwise protect and assure Secured Party of its rights and interests hereunder.

       4.     **Authorization to File Financing Statements.** Grantor hereby authorizes Secured Party to prepare and file such financing statements (including continuation statements) or amendments thereof or supplements thereto or other instruments as Secured Party may from time to time deem necessary or appropriate in order to perfect and maintain the security interests granted hereunder in accordance with the UCC, which such financing statements may describe the Collateral in the same manner as described herein or may contain an indication or description of Collateral that describes such property in any other manner as Secured Party may determine, in its sole discretion, is necessary, advisable or prudent to ensure the perfection of the security interest in the Collateral granted herein.

5.   Remedies.

(a)   General Remedies.  Upon the occurrence of an Event of Default under the Note and during continuation thereof, Secured Party shall have, in addition to the rights and remedies provided herein, or by any applicable law (including, but not limited to, levy of attachment, garnishment and the rights and remedies set forth in the UCC of the jurisdiction applicable to the affected Collateral), the rights and remedies of a secured party under the UCC (regardless of whether the UCC is the law of the jurisdiction where the rights and remedies are asserted and regardless of whether the UCC applies to the affected Collateral), and further, Secured Party may, with or without judicial process or the aid and assistance of others: (i) enter on any premises on which any of the Collateral may be located and, without resistance or interference by the Grantor, take possession of the Collateral; (ii) dispose of any Collateral on any such premises; (iii) require the Grantor to assemble and make available to Secured Party at the expense of the Grantor any Collateral at any place and time designated by Secured Party which is reasonably convenient to both parties; (iv) remove any Collateral from any such premises for the purpose of effecting sale or other disposition thereof; and/or (v) without demand and without advertisement, notice, hearing or process of law, all of which Grantor hereby waives to the fullest extent permitted by law, at any place and time or times, sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels any or all Collateral held by or for it at public or private sale, at any exchange or broker's board or elsewhere, by one or more contracts, in one or more parcels, upon credit or otherwise, at such prices and upon such terms as Secured Party deems advisable, in its sole discretion (subject to any and all mandatory legal requirements, including, without limitation, the requirement that such sale be conducted in a commercially reasonable manner). Grantor acknowledges that any such private sale may be at prices and on terms less favorable to the seller than the prices and other terms which might have been obtained at a public sale and, notwithstanding the foregoing, agrees that such private sale shall be deemed to have been made in a commercially reasonable manner.  Secured Party or any other Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by applicable law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold. Neither Secured Party's compliance with applicable law nor its disclaimer of warranties relating to the Collateral shall be considered to adversely affect the commercial reasonableness of any sale. To the extent the rights of notice cannot be legally waived hereunder, Grantor agrees that any requirement of reasonable notice shall be met if such notice, specifying the place of any public sale or the time after which any private sale is to be made, is personally served on or mailed, postage prepaid, to Grantor at the address set forth in the Settlement Agreement at least ten (10) days before the time of sale or other event giving rise to the requirement of such notice.  Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.  To the extent permitted by applicable law, Grantor hereby waives all of its rights of redemption with respect to any such sale. Subject to the provisions of applicable law, Secured Party may postpone or cause the postponement of the sale of all or any portion of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice,

to the extent permitted by law, be made at the time and place to which the sale was postponed, or Secured Party may further postpone such sale by announcement made at such time and place.  To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against Secured Party or any Secured Party arising out of the exercise by them of any rights hereunder except to the extent any such claims, damages or demands result solely from the gross negligence or willful misconduct of Secured Party or any other Secured Party, in each case against whom such claim is asserted.  Each Grantor agrees that the internet shall constitute a "place" for purposes of Section 9-610(b) of the UCC and that any sale of Collateral to a licensor pursuant to the terms of a license agreement between such licensor and a Grantor is sufficient to constitute a commercially reasonable sale (including as to method, terms, manner, and time) within the meaning of Section 9-610 of the UCC.

   (b) <u>Nonexclusive Nature of Remedies</u>.  Failure by Secured Party to exercise any right, remedy or option under this Security Agreement, or as provided by law, or any delay by Secured Party in exercising the same, shall not operate as a waiver of any such right, remedy or option.  No waiver hereunder shall be effective unless it is in writing, signed by the party against whom such waiver is sought to be enforced and then only to the extent specifically stated, which in the case of Secured Party shall only be granted as provided herein.  To the extent permitted by law, neither Secured Party, nor any party acting as attorney for Secured Party, shall be liable hereunder for any acts or omissions or for any error of judgment or mistake of fact or law other than their gross negligence or willful misconduct hereunder.  The rights and remedies of Secured Party under this Security Agreement shall be cumulative and not exclusive of any other right or remedy which Secured Party or the Secured Parties may have.

   (c) <u>Retention of Collateral</u>.  In addition to the rights and remedies hereunder, Secured Party may, in compliance with Sections 9-620 and 9-621 of the UCC or otherwise complying with the requirements of applicable law of the relevant jurisdiction, accept or retain the Collateral in satisfaction of the Secured Obligations.  Unless and until Secured Party shall have provided such notices, however, Secured Party shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

   (d) <u>Waiver; Deficiency</u>.  Grantor hereby waives, to the extent permitted by applicable laws, all rights of redemption, appraisement, valuation, stay, extension or moratorium now or hereafter in force under any applicable Laws in order to prevent or delay the enforcement of this Security Agreement or the absolute sale of the Collateral or any portion thereof.  In the event that the proceeds of any sale, collection or realization are insufficient to pay all amounts to which Secured Party is legally entitled, Grantor shall be liable for the deficiency, together with interest thereon at the Default Rate (as defined in the Monthly Payments Promissory Note), together with the costs of collection and the fees, charges and disbursements of counsel.  Any surplus remaining after the full payment and satisfaction of the Secured Obligations shall be returned to the Grantors or to whomsoever a court of competent jurisdiction shall determine to be entitled thereto.

6.      Continuing Agreement. This Security Agreement shall remain in full force and
effect until the KSL Entities' Release Date, at which time this Security Agreement shall be
automatically terminated and Secured Party shall, upon the request and at the expense of the
Grantor, forthwith release all of its liens and security interests hereunder and shall execute and
deliver all UCC termination statements and/or other documents reasonably requested by the
Grantors evidencing such termination.

7.      Counterparts. This Security Agreement may be executed in any number of
counterparts, each of which where so executed and delivered shall be an original, but all of which
shall constitute one and the same instrument.

8.      Captions. All paragraph and subparagraph captions in this Security Agreement
are for the convenience of reference only and shall not affect the construction, meaning or
interpretation of any provision herein.  Any reference to the masculine, feminine or neutral
gender shall be a reference to such other gender as is appropriate.  References to the singular
shall include the plural and vice versa.

9.      Severability. Should any provision of this Security Agreement be held invalid,
illegal or unenforceable in any jurisdiction by a court of competent jurisdiction, that holding
shall be effective only to the extent of such invalidity, illegality or unenforceability without
invalidating or rendering illegal or unenforceable the remaining provisions of this Security
Agreement, or the remainder of any paragraph or provision. This Security Agreement shall be
construed in all respects as if any invalid, ILLEGAL or unenforceable paragraph or provision
was omitted. It is the intent of the Parties that this Security Agreement be fully enforced to the
fullest extent permitted by law.

10.     Entirety. This Security Agreement and the other documents relating to the Secured
Obligations represent the entire agreement of the parties hereto and thereto, and supersede all prior
agreements and understandings, oral or written, if any, including any commitment letters or
correspondence, any other documents relating to the Secured Obligations, or the transactions
contemplated herein and therein.

10.     Governing Law; Jurisdiction. This Security Agreement is executed and delivered
in the State of New York (the "Governing Law Jurisdiction") and it is the desire and intention of
the Parties that it be in all respects governed by, construed, interpreted and enforced according to
the laws of the Governing Law Jurisdiction without reference to the conflicts of laws principles
of the Governing Law Jurisdiction.  The Parties consent to the jurisdiction of the Federal Court
for the Eastern Districts of New York and irrevocably agree that all actions or proceedings
arising out of or relating to this Agreement shall be litigated in such courts.  The parties each
expressly consent to the jurisdiction of the aforesaid courts and waive any defense of forum non
conveniens.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**[SIGNATURE PAGE FOLLOWS]**

**[SIGNATURE PAGE TO SECURITY AGREEMENT]**

**KSL MEDIA, INC.**

By: _____
    Name: _KAL LIEBOW_____
    Title: _CHAIRMAN_____

**KSL MEDIA NEW YORK, INC.**

By: _____
    Name: _KAL LIEBOW_____
    Title: _CHAIRMAN_____

**TV10S, LLC**

By: _____
    Name: _KAL LIEBOW_____
    Title: _____

**FULCRUM 5, INC.**

By: _____
    Name: _Kal LIEBOW_____
    Title: _____

**JEM PARTNERS, LLC**

By: _____
    Name: _____
    Title: _____

# EXHIBIT D

## NEGATIVE COVENANT AGREEMENT

THIS NEGATIVE COVENANT AGREEMENT (this "Agreement"), is made as of the __9__ day of July, 2012, by HAROLD (AKA "Hank") COHEN ("Obligor"), an individual whose address is c/o KSL, 15910 Ventura Boulevard, 9th Floor, Encino, CA 91436, KSL MEDIA, INC. ("KSL"), a Delaware corporation with an address at 387 Park Avenue South, New York, New York 10016, in favor of CUMBERLAND PACKING CORP. D/B/A SWEET'N LOW ("Cumberland"), a New York corporation whose address is 2 Cumberland Street, Brooklyn, New York 11205.

### W I T N E S S E T H :

WHEREAS, reference is made to the July 2012 Confidential Settlement Agreement and Release Among the KSL Entities, the KSL Individuals and Cumberland (the "Settlement Agreement"; capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement) dated as of July ___, 2012, by and between, on the one hand, Obligor, KSL MEDIA NEW YORK, INC. ("KSL New York"), a New York corporation with an address at 387 Park Avenue South, New York, New York 10016, KSL MEDIA, INC. ("KSL"), a Delaware corporation with an address at 387 Park Avenue South, 4th Floor, New York, New York 10016, FULCRUM 5, Inc., a Delaware corporation with an address at 387 Park Avenue South, 4th Floor, New York, New York 10016 ("Fulcrum"), TV10s, LLC ("TV10s" and together with KSL and KSL New York, and Fulcrum, the "KSL Entities"), a California limited liability company with an address at 387 Park Avenue South, New York, New York 10016 and KALMAN S. LIEBOWITZ ("Liebowitz" and together with Obligor, and the KSL Entities, collectively, the "KSL Parties" and individually, a "KSL Party"), an individual whose address is c/o KSL, 15910 Ventura Boulevard, 9th Floor, Encino, CA 91436, and, on the other hand, Cumberland; and

WHEREAS, pursuant to the Settlement Agreement, Obligor has agreed to refrain from taking certain actions, all on the terms more particularly described herein.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Obligor hereby covenants and agrees as follows:

1.    Negative Covenants. Obligor hereby agrees that until the Termination Date (as defined below), Obligor shall not cause a Trigger Event to occur.  As used herein, "Trigger Event" means any one or more of the following:

a.    Any KSL Entity transfers any of its material assets, other than the disposition of obsolete assets in the ordinary course of its business or other than to another KSL Entity who is currently or is made a joinder party to the Promissory Note and this Agreement pursuant to documentation reasonably acceptable to Cumberland;

b.    Any KSL Entity makes any distributions or dividends with respect to any ownership interests in such KSL Entity, other than distributions necessary to cover tax obligations of Obligor and Liebowitz;

1

c.      Liebowitz or Obligor receives compensation from KSL or any other KSL Entity (by distribution, draw or otherwise) in excess of $630,000.00, which is the annual compensation level now in effect for Obligor and Liebowitz, respectively;

d.      Any KSL Entity makes any loan to Obligor and/or Liebowitz, other than advances for reasonable business expenses to be incurred in the ordinary course of business;

e.      Any KSL Party diverts any media buying opportunity that comes to the attention of any KSL Party or any other business opportunity that otherwise would have historically been performed by a KSL Entity or any other KSL Party to any other person, venture or entity unless such person, entity or venture is made a joinder party to the Promissory Note and this Agreement pursuant to documentation reasonably acceptable to Cumberland, other than diversion to a person, venture or entity from which no KSL Party receives any compensation or has any direct, indirect, beneficial or other interest. For avoidance of doubt, this provision is not to be construed as a covenant not to compete and accordingly, the restrictions in this sub-section apply to KSL Individuals only during such time as they are officers, directors, direct or indirect shareholders, managers, members or employees of any KSL Entity.

2.      Obligor Liability.  In the event that Obligor causes a Trigger Event to occur, Obligor hereby agrees that Obligor shall be liable for all amounts due and payable by any KSL Party under Promissory Note and that such Trigger Event shall constitute an Event of Default under the Settlement Agreement. Notwithstanding the foregoing, in the event that the Trigger Event occurs after the date on which Obligor is released pursuant to the Settlement Agreement, the Trigger Event shall not affect the release of Obligor with respect to the subject matter of such release (i.e., after the KSL Individuals Release Date, Obligor's liability shall only relate to failure by the KSL Parties to pay amounts due and owing under the Promissory Note and limited to amounts still outstanding thereunder). For avoidance of doubt, the liability of Obligor shall be several and not joint and several from any other KSL Party entering into a Negative Covenant Agreement.

3.      Termination of Agreement.  This Agreement shall be in full force and effect continuously from the date hereof through and including the date one hundred (100) days after the date on which the amounts due under the Promissory Note are indefeasibly paid in full (the "Termination Date").

4.      Intentionally Deleted.

5.      Inducement.  It is expressly understood that the obligations of Obligor hereunder are an additional and cumulative benefit given to Cumberland as an inducement for Cumberland to enter into the Settlement Agreement.

6.      Lawful Funds.  All payments hereunder shall be made in lawful money of the United States of America.  No delay in making demand on Obligor for satisfaction of its liabilities hereunder shall prejudice Cumberland's rights to enforce such liabilities.

2

7.    <u>Captions</u>.  All paragraph and subparagraph captions in this Agreement, are for the convenience of reference only and shall not affect the construction, meaning or interpretation of any provision herein.  Any reference to the masculine, feminine or neutral gender shall be a reference to such other gender as is appropriate. References to the singular shall include the plural and vice versa.

8.    <u>Governing Law; Severability</u>.  This Agreement is executed and delivered in the State of New York (the "Governing Law") and it is the desire and intention of Obligor that it be in all respects governed by, construed, interpreted and enforced according to the laws of the Governing Law without reference to the conflicts of laws principles of the Governing Law.  Any provision of this Agreement which is unenforceable, invalid or contrary to law, or the inclusion of which would affect the validity, legality or enforcement of this Agreement shall be of no effect, and in such case, all the remaining terms and provisions of this Agreement shall subsist and shall be fully effective according to the terms of this Agreement, the same as though any such provision had not been included herein.  Obligor consents to the jurisdiction of the Federal Court for the Eastern District of New York, and irrevocably agrees that all actions or proceedings arising out of or relating to this Agreement or the Claims shall be litigated in such courts. Obligor expressly consents to the jurisdiction of the aforesaid courts and waive any defense of forum non conveniens.

9.    <u>Notices</u>.  Any notice request or demand to be given hereunder shall be in writing, and shall be deemed to have been given when personally delivered, deposited for delivery with an overnight courier service such as Federal Express, or placed in the United States mail, with proper registered or certified postage prepaid, return receipt requested, addressed to the party concerned at the address shown on page 1 hereof, and shall be effective the date of mailing, provided, however, that each of the foregoing addresses for notice may be changed from time to time by notice given to the other party, in the manner herein provided for.

10.    <u>Entire Agreement</u>.  This Agreement shall constitute the entire agreement of Obligor in favor of Cumberland with respect to the subject matter hereof.

IN WITNESS WHEREOF, Obligor has executed this Agreement as of the day and year first above written.

HAROLD (aka "Hank") COHEN

3

# EXHIBIT E

<u>**NEGATIVE COVENANT AGREEMENT**</u>

THIS NEGATIVE COVENANT AGREEMENT (this "Agreement"), is made as of the
_____ day of July, 2012, by KALMAN S. LIEBOWITZ ("Obligor"), an individual whose
address is c/o KSL, 15910 Ventura Boulevard, 9th Floor, Encino, CA 91436, KSL MEDIA, INC.
("KSL"), a Delaware corporation with an address at 387 Park Avenue South, New York, New
York 10016, in favor of CUMBERLAND PACKING CORP. D/B/A SWEET'N LOW
("Cumberland"), a New York corporation whose address is 2 Cumberland Street, Brooklyn, New
York 11205.

**WITNESSETH:**

WHEREAS, reference is made to the July 2012 Confidential Settlement Agreement and
Release Among the KSL Entities, the KSL Individuals and Cumberland (the "Settlement
Agreement"; capitalized terms used but not defined herein shall have the meanings ascribed to
them in the Settlement Agreement) dated as of July ___, 2012, by and between, on the one hand,
Obligor, KSL MEDIA NEW YORK, INC. ("KSL New York"), a New York corporation with an
address at 387 Park Avenue South, New York, New York 10016, KSL MEDIA, INC. ("KSL"), a
Delaware corporation with an address at 387 Park Avenue South, 4th Floor, New York, New
York 10016, FULCRUM 5, Inc., a Delaware corporation with an address at 387 Park Avenue
South, 4th Floor, New York, New York 10016 ("Fulcrum"), TV10s, LLC ("TV10s" and together
with KSL and KSL New York, and Fulcrum the "KSL Entities"), a California limited liability
company with an address at 387 Park Avenue South, New York, New York 10016 and
HAROLD COHEN (a/k/a HANK COHEN) ("Cohen" and together with Obligor, and the KSL
Entities, collectively, the "KSL Parties" and individually, a "KSL Party"), an individual whose
address is c/o KSL, 15910 Ventura Boulevard, 9th Floor, Encino, CA 91436, and, on the other
hand, Cumberland; and

WHEREAS, pursuant to the Settlement Agreement, Obligor has agreed to refrain from
taking certain actions, all on the terms more particularly described herein.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and
valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Obligor
hereby covenants and agrees as follows:

1.     <u>Negative Covenants.</u> Obligor hereby agrees that until the Termination Date (as
defined below), Obligor shall not cause a Trigger Event to occur. As used herein, "Trigger
Event" means any one or more of the following:

a.     Any KSL Entity transfers any of its material assets, other than the disposition of
obsolete assets in the ordinary course of its business or other than to another KSL Entity
who is currently or is made a joinder party to the Promissory Note and this Agreement
pursuant to documentation reasonably acceptable to Cumberland;

b.     Any KSL Entity makes any distributions or dividends with respect to any
ownership interests in such KSL Entity, other than distributions necessary to cover tax
obligations of Obligor and Cohen;

1

c.     Cohen or Obligor receives compensation from KSL or any other KSL Entity (by distribution, draw or otherwise) in excess of $630,000, which is the annual compensation level now in effect for Obligor and Cohen, respectively;

d.     Any KSL Entity makes any loan to Obligor and/or Cohen, other than advances for reasonable business expenses to be incurred in the ordinary course of business;

e.     Any KSL Party diverts any media buying opportunity that comes to the attention of any KSL Party or any other business opportunity that otherwise would have historically been performed by a KSL Entity or any other KSL Party to any other person, venture or entity unless such person, entity or venture is made a joinder party to the Promissory Note and this Agreement pursuant to documentation reasonably acceptable to Cumberland, other than diversion to a person, venture or entity from which no KSL Party receives any compensation or has any direct, indirect, beneficial or other interest. For avoidance of doubt, this provision is not to be construed as a covenant not to compete and accordingly, the restrictions in this sub-section apply to KSL Individuals only during such time as they are officers, directors, direct or indirect shareholders, managers, members or employees of any KSL Entity;

2.     Obligor Liability.  In the event that Obligor causes a Trigger Event to occur, Obligor hereby agrees that Obligor shall be liable for all amounts due and payable by any KSL Party under Promissory Note and that such Trigger Event shall constitute an Event of Default under the Settlement Agreement. Notwithstanding the foregoing, in the event that the Trigger Event occurs after the date on which Obligor is released pursuant to the Settlement Agreement, the Trigger Event shall not affect the release of Obligor with respect to the subject matter of such release (i.e., after the KSL Individuals Release Date, Obligor's liability shall only relate to failure by the KSL Parties to pay amounts due and owing under the Promissory Note and limited to amounts still outstanding thereunder). For avoidance of doubt, the liability of Obligor shall be several and not joint and several from any other KSL Party entering into a Negative Covenant Agreement.

3.     Termination of Agreement.  This Agreement shall be in full force and effect continuously from the date hereof through and including the date one hundred (100) days after the date on which the amounts due under the Promissory Note are indefeasibly paid in full (the "Termination Date").

4.     Intentionally Deleted.

5.     Inducement.  It is expressly understood that the obligations of Obligor hereunder are an additional and cumulative benefit given to Cumberland as an inducement for Cumberland to enter into the Settlement Agreement.

6.     Lawful Funds.  All payments hereunder shall be made in lawful money of the United States of America.  No delay in making demand on Obligor for satisfaction of its liabilities hereunder shall prejudice Cumberland's rights to enforce such liabilities.

7.    Captions. All paragraph and subparagraph captions in this Agreement, are for the convenience of reference only and shall not affect the construction, meaning or interpretation of any provision herein. Any reference to the masculine, feminine or neutral gender shall be a reference to such other gender as is appropriate. References to the singular shall include the plural and vice versa.

8.    Governing Law; Severability.    This Agreement is executed and delivered in the State of New York (the "Governing Law") and it is the desire and intention of Obligor that it be in all respects governed by, construed, interpreted and enforced according to the laws of the Governing Law without reference to the conflicts of laws principles of the Governing Law. Any provision of this Agreement which is unenforceable, invalid or contrary to law, or the inclusion of which would affect the validity, legality or enforcement of this Agreement shall be of no effect, and in such case, all the remaining terms and provisions of this Agreement shall subsist and shall be fully effective according to the terms of this Agreement, the same as though any such provision had not been included herein. Obligor consents to the jurisdiction of the Federal Court for the Eastern District of New York, and irrevocably agrees that all actions or proceedings arising out of or relating to this Agreement or the Claims shall be litigated in such courts. Obligor expressly consents to the jurisdiction of the aforesaid courts and waive any defense of forum non conveniens.

9.    Notices. Any notice request or demand to be given hereunder shall be in writing, and shall be deemed to have been given when personally delivered, deposited for delivery with an overnight courier service such as Federal Express, or placed in the United States mail, with proper registered or certified postage prepaid, return receipt requested, addressed to the party concerned at the address shown on page 1 hereof, and shall be effective the date of mailing, provided, however, that each of the foregoing addresses for notice may be changed from time to time by notice given to the other party, in the manner herein provided for.

10.    Entire Agreement.    This Agreement shall constitute the entire agreement of Obligor in favor of Cumberland with respect to the subject matter hereof.

IN WITNESS WHEREOF, Obligor has executed this Agreement as of the day and year first above written.

_____
KALMAN S. LIEBOWITZ

3

# EXHIBIT F

## EXHIBIT "F"

| | Check/Wire No. | Date | Transferee | Amount |
|---|---|---|---|---|
| 1. | 7021201 | 07/06/2012 | Cumberland Packing Corp. | 1,800,000.00 |
| 2. | 7121201 | 07/12/2012 | Cumberland Packing Corp. | 50,000.00 |
| 3. | 7201201 | 07/24/2012 | JEM Partners LLC | 75,000.00 |
| 4. | 8011201 | 08/01/2012 | JEM Partners LLC | 150,000.00 |
| 5. | 8311201 | 08/31/2012 | JEM Partners LLC | 125,000.00 |
| 6. | 9041201 | 09/04/2012 | JEM Partners LLC | 25,000.00 |
| 7. | 9281200 | 09/28/2012 | JEM Partners LLC | 75,000.00 |
| 8. | 1031120 | 10/30/2012 | JEM Partners LLC | 150,000.00 |
| 9. | 1129120 | 11/29/2012 | JEM Partners LLC | 150,000.00 |
| 10. | 1231121 | 12/31/2012 | JEM Partners LLC | 150,000.00 |
| 11. | 1311300 | 01/31/2013 | JEM Partners LLC | 150,000.00 |
| 12. | 2281300 | 02/28/2013 | JEM Partners LLC | 150,000.00 |
| 13. | 3291300 | 03/29/2013 | JEM Partners LLC | 150,000.00 |
| 14. | 4301300 | 04/30/2013 | JEM Partners LLC | 150,000.00 |
| 15. | 5311300 | 05/31/2013 | JEM Partners LLC | 150,000.00 |
| 16. | 6281300 | 06/28/2013 | JEM Partners LLC | 150,000.00 |
| 17. | 7311300 | 07/31/2013 | JEM Partners LLC | 150,000.00 |
| 18. | 8121300 | 08/12/2013 | JEM Partners LLC | 1,995,415.00 |

Payments 1 and 2 are defined in the Complaint as the Downpayment.
Payments 3 through 17, inclusive, are defined in the Complaint as the Note Payments.
Payment 16 is defined in the Complaint as the June Note Payment.
Payment 17 is defined in the Complaint as the July Note Payment.
Payment 18 is defined in the Complaint as the Prepayment.
Payments 16, 17 and 18, inclusive are defined in the Complaint as the Preference Payments.
Payments 1 through 18, inclusive, are defined in the Complaint as the Payments.